## THE SILVERPALM.

**SILVER LINE, Limited, v. UNITED STATES. et al.**

No. 7572.

Circuit Court of Appeals, Ninth Circuit.

Oct. 15, 1935.

Lillick, Olson, Levy & Geary, Ira S. Lillick, Joseph J. Geary, and Allan E. Charles, all of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellees.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

On October 24, 1933, the cruiser Chicago, of the United States Navy, and the British motorship Silverpalm, owned and operated by a British corporation, were in collision off the coast of California, in the vicinity of Point Sur, and outside the territorial waters of the United States. Three officers of the cruiser Chicago were killed when the bow of the Silverpalm entered the hull of the Chicago, crushing them in their quarters between decks. Their administrators, appellees, claim that the law of Great Britain gives a right of action to administrators of decedents against the persons negligently causing the decedents' death upon the high seas and outside the territorial jurisdiction of Great Britain, and further claim that this right of action exists although the consummation of the tort and the injury it created occurred entirely within a vessel under the dominion of the United States.

The United States gives a cause of action against the persons negligently causing death on the high seas and in favor of the personal representative of the decedent, as follows: "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued" (46 USCA § 761), and a right of action maintainable in our courts where such right is created by foreign law as follows: "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding" (46 USCA § 764).

The United States and the administrators of the deceased officers filed a libel in rem against appellant's motorship Silverpalm in the court below, claiming damages against appellant, alleging that the negligent navigation of the Silverpalm caused injury to the Chicago and the death of the officers whose beneficiaries they respective-

ly represent. The libel did not allege or claim for the administrators under the law of Great Britain. Appellant answered, denying fault on the part of the Silverpalm and cross-libeled for injury to her.

Thereafter appellant filed its petition for limitation of its liability for any damage arising from its participancy in the collision, seeking, alternatively, exoneration from all liability. Due appraisement was had, stipulation for value given, and thereupon, under the statutory injunction of the Limited Liability Act, all proceedings in the libels in rem ceased.

Thereafter the District Court issued its injunction, which was duly served, restraining all further suits and further action in the pending suit of the administrators. The administrators filed their claims and answered the petition for limitation, alleging, inter alios, that appellant negligently caused the officers' death, and in the answer alleged, but did not base their claims on, a right of action therefor created by certain British statutes.

The libel, cross-libel, and limitation proceeding were ordered "consolidated for all purposes and that any proceedings taken, heretofore or hereafter, in any one of said causes may be deemed taken in the other two." The Commissioner's report showed the claims exceeded the value of the ship and pending freight.

The administrators thereafter moved the court to modify the injunction to permit them to proceed against appellant in personam, but failing to state whether under the alleged British or the United States cause of action.

■ The court, on July 7, 1934, made its order modifying the injunction and permitting the administrators to sue appellant. The order modifying the injunction does not confine the relief conferred to the prosecution of the causes of action claimed to be created by the British statute. Furthermore, it affirmatively purports to permit the administrators "to file suit in personam at law," although 46 USCA § 764, supra, permits suits under foreign law for such deaths only to be "maintained in an appropriate action in admiralty."

■ The record shows no proof of the claimed law of Great Britain. The verification on information and belief of the answer to the petition for limitation, alleging the foreign law, cannot be regarded as an affidavit in proof of it. The appellant's verified allegation in its cross-libel that "nationals of the United States of America are allowed to sue in the courts of Great Britain under circumstances similar to those set forth herein" does not state whether the suable right of action is that of the United States or of Great Britain or that Great Britain has created any such right of action.

The absence of any proof below of the asserted British law, and the purported permission "to file suit in personam at law" would require reversal.

■■ Although the order is a final one so far as it concerns a right in the appellant to have the administrators' claims tried in the limitation proceeding and in the administrators to file suit in personam at law, no findings of fact or conclusions of law were made by the District Court. Had the court followed Admiralty Rule 46½ (28 USCA following section 723), the mental process of making findings quite likely would have suggested to it the distinction between a cause of action based on the British statute, concerning which its decision might have permitted a suit otherwise than in the limitation proceeding, and a cause of action arising from the United States statute, which at that stage in the litigation, at any rate, should have been confined to the limitation proceeding and, in any event, for death caused on a United States naval vessel outside state territorial jurisdiction, in admiralty. Furthermore, in a case of first impression, involving the important question here presented, the writing of an opinion in accordance with the long-established practice in admiralty in this district would have concentrated the mind of the court on the terms of the United States death statute involved, with its provision that whatever rights the foreign law may confer are to be "maintained in an appropriate action in admiralty."

■ However, since we know from the briefs here that Lord Campbell's Act or other British legislation, which we cannot judicially notice, will be offered in proof on a renewal of the motion below, and since the appeal in admiralty warrants the taking of such testimony here, we order its allowance, and suggest that it be presented with a view to the following questions:

(1) What is the British legislation relative to the right of recovery for death on the high seas beyond any territorial jurisdiction?

(2) If this legislation does create such right of recovery, but does not expressly recognize a cause of action for the negligent killing by the owner of a British vessel of persons while in or upon a non-British vessel on the high seas beyond any territorial jurisdiction, do the decisions of the British courts so interpret it?

The appeal should be further briefed with reference to the above questions and also with reference to the question of:

(3) The power of a nation to create a right of action for a tort where the person committing it initiates the wrongful act at a place within the dominion of that nation and the tort is consummated by the continuance of such wrongful act outside that nation's dominion and at a place within the dominion of another nation, where it causes injury to the property of or the person in whom the right of action is purported to be created.

Twenty days are ordered allowed for the presentation of proof of such British law, statutes, and decisions as the parties may be advised to offer. We strongly urge this be by stipulation of the parties. Appellees' brief to be filed within ten days thereafter. Appellant to have ten days to reply.